UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CALVIN JOHNSON,

                Petitioner,

v.                                CASE NO. 2:10-cv-11210
                                HONORABLE NANCY G. EDMUNDS
KENNETH ROMANOWSKI,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DENYING A CERTIFICATE OF APPEALABILITY, BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

       Petitioner Calvin Johnson has filed a *pro se* petition for the writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  The habeas petition challenges Petitioner's state convictions

for three counts of armed robbery.  Petitioner alleges that the evidence was insufficient to

sustain the convictions, trial counsel was ineffective, the trial court committed errors, the

prosecutor engaged in misconduct, and the cumulative effect of errors deprived him of due

process.  Respondent argues in an answer to the habeas petition that all of Petitioner's

claims are procedurally defaulted.  The Court agrees.  Therefore, the habeas petition will

be denied.

## I.  BACKGROUND

### A.  The Charges, Trial Testimony, Verdict, and Sentence

       Petitioner was charged with three counts of armed robbery, Mich. Comp. Laws §

750.529.  The charges  arose from three separate armed robberies in Oakland County,

Michigan in October of 2002.  The trial court combined the three cases for a jury trial in Oakland County Circuit Court.

### 1. The First Robbery

There was no physical evidence linking Petitioner to the crimes, but the testimony at trial established that the first robbery occurred in Ferndale at a heating wholesaler known as Hydronics Supply.  Larry Atkins testified that, about 5:15 p.m. on October 16, 2002, a man came into the store and asked whether the company was hiring.  Atkins responded that they were not hiring, but that the man could leave his name on a piece of paper.  The man left a piece of paper on the counter and turned to go, but then jumped over the counter, pointed a gun at Atkins' head, and pushed Atkins into his office.  At the man's request, Atkins gave him his wallet, money clip, and watch.  Before leaving, the man told Atkins not to chase him or call anybody or he would be a dead man.  He then jumped back over the counter and left the building.

The police were called and a sketch of the suspect was made based on Atkins' description of the man.  Atkins described the suspect to the police as a black male in his early thirties, short hair, 5'8" tall, medium build, no facial hair, wearing a brown or green shirt, and armed with a blue steel revolver.  About two or three weeks later, a detective asked Atkins to look at some photographs.  Atkins picked the man in the upper right-hand corner, and at trial, he identified Petitioner as the man who had robbed him.

Detective John Thull of the Ferndale Police Department testified that he showed an array of six photos to Atkins on November 4, 2002.  Within three seconds, Atkins picked Petitioner's photo, which was the photograph located in the upper right-hand corner of the array.  Atkins informed Detective Thull that he was "very certain" of his identification.

2

Detective Thull denied telling Atkins anything about the photos.  He claimed that he typically explained to witnesses that he had a suspect who was in the photo array, but that he could be wrong about the suspect and that the witness should not feel compelled to pick a photo, because if Thull were wrong, the suspect was still at large.

### 2. The Second Robbery

The second robbery occurred on October 17, 2002, at the Three Dollar Car Wash in Bloomfield Township.  Christopher Carpenter and Matthew McNamara were working at the car wash about 6:45 p.m. that day when a man walked into the car wash and asked if they were hiring.  McNamara responded that they were not hiring, but that the man could leave his name and telephone number in case they decided to hire someone in the future. The man began to write something on a piece of paper, but then dropped the paper, pulled out a gun, and asked for McNamara's and Carpenter's money, in addition to, money from the safe.  McNamara and Carpenter gave the man their money and wallets and money from the safe.  The man left, but threatened to come back if they did anything after he left.

Carpenter testified at trial that he did not get a good look at the robber and was unable to identify him because he had focused on the man's gun, which he thought was a semi-automatic pistol.  McNamara, on the other hand, testified that he had looked at the man and that, when the police showed him a photo array, he picked number three in the photo array.  He informed the police that the robber was 5'8" tall, 160 pounds, with black hair, brown eyes, and a mustache.  At trial, McNamara identified Petitioner as the robber, and he testified that he thought Petitioner had been carrying a revolver.

Officer Sean Kelley of the Bloomfield Township Police Department testified that he was dispatched to the Three Dollar Car Wash on October 17, 2002, and that one of the

3

employees described the suspect as 5'8" and the other employee described the suspect as 5'10". Both of the employees informed him that the suspect was 170 pounds.

Detective Craig Shackleford of the Bloomfield Township Police Department testified that he showed a photo array to Matthew McNamara and that McNamara picked Petitioner's photograph within a matter of seconds. Detective Shackleford denied telling McNamara anything about the people in the array, and he claimed that he went out of his way not to make any suggestive comments to McNamara.

### 3. The Third Robbery

The third robbery occurred at the Main Auto Clearance Center in Royal Oak. Akram Azzow testified that, about noon on October 21, 2002, a man approached him in the office at the clearance center and asked whether the clearance center financed cars. Azzow explained that they accepted cash only. The man then pulled out a gun and told Azzow to open the safe. When Azzow informed the man that there was no safe, the man hit him on the side of the head with the gun. Azzow then gave his wallet, ring, and watch to the man. The man took one telephone from the office and pulled the wires of the other telephone, and before running away, he threatened to "get" Azzow if Azzow called the police.

Azzow nevertheless called the police and, about a month or two after the crime, a police officer showed him some pictures. He immediately picked the third photo, which was Petitioner's photo. Azzow also identified Petitioner at the preliminary examination and at trial as the man who robbed and assaulted him.

On cross-examination, Azzow stated that the detective who showed him the photo array did not tell him who to pick out, but the detective may have told him afterward that he picked the right person. Azzow repeatedly insisted at trial that Petitioner was the man who

4

robbed him.

Officer Ronald Durant testified that Azzow described the suspect to him as a thin, black male, approximately 5'8" tall with black hair, wearing dark clothes, and armed with a black revolver.  Police Officer Richard Babecki testified that no firearm was recovered at the Main Auto Clearance Center and that he was unable to recover any fingerprints from the phones at the Center.  He conceded that he had no scientific evidence suggesting who might have committed the robbery.

Petitioner waived his right to testify and did not present any witnesses.  His defense was that the prosecution did not prove its case.  He noted that there was no scientific evidence linking him to the crime, and he claimed through counsel that the eyewitnesses' identification of him was unreliable due to the lack of specificity and certain discrepancies in their descriptions of the robber and his gun.

On November 16, 2004, the jury found Petitioner guilty, as charged, of three counts of armed robbery.  The trial court sentenced Petitioner as a habitual offender, third offense, to three concurrent terms of twenty-five to fifty years.  Petitioner was thirty-five years old at the time.

## B.  The Direct Appeal, Post-Conviction Motion, and Collateral Appeal

In an appeal of right, Petitioner claimed that there was insufficient evidence to support his convictions and that his trial attorney was ineffective for failing to request appointment of an expert on eyewitness identification.   The Michigan Court of Appeals found no merit in these claims and affirmed Petitioner's convictions in an unpublished, *per curiam* opinion.  *See People v. Johnson*, No. 260314 (Mich. Ct. App. June 27, 2006). Petitioner applied for leave to appeal in the Michigan Supreme Court, but the clerk of the

5

state supreme clerk returned Petitioner's application on August 24, 2006, because it was not received within fifty-six days of the Court of Appeals decision, as required by Michigan Court Rule 7.302(C)(2).

On or about November 5, 2007, Petitioner filed a motion for relief from judgment in which he alleged that trial and appellate counsel were ineffective, the trial court abused its discretion by denying the jury's request for a transcript, the trial court's jury instruction on reasonable doubt was erroneous, the prosecution engaged in misconduct, the trial court erred by joining three unrelated cases for trial, and the cumulative effect of the errors deprived him of a fair trial. The trial court denied Petitioner's motion pursuant to Michigan Court Rule 6.508(D)(3). The court stated that Petitioner had failed to demonstrate "good cause" for failing to raise his claims on appeal and "actual prejudice" from the alleged irregularities. The Michigan Court of Appeals denied Petitioner's subsequent application for leave to appeal on the ground that Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Johnson*, No. 289621 (Mich. Ct. App. May 6, 2009). On December 21, 2009, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Johnson*, 775 N.W.2d 752 (Mich. 2009).

## C. The Habeas Petition

Petitioner filed his habeas corpus petition on March 26, 2010. The Court construes his pleading and reply brief liberally to include all eight claims that Petitioner presented to the state courts on direct and collateral review. These claims, briefly summarized, are:

(1) the prosecution did not introduce sufficient evidence to convict Petitioner of three counts of armed robbery;

(2) trial counsel was ineffective for failing to request appointment of an identification expert;

6

(3) trial counsel was effective for (a) failing to move for the production of witnesses who could have established an alibi defense, (b) advising Petitioner not to testify, and (c) failing to move to suppress a statement given by Shawn Metts;[1]

(4) the trial court abused its discretion by denying the jury's request for a transcript, and trial counsel was ineffective failing to object;

(5) the trial court erroneously instructed the jury that a reasonable doubt is the kind of doubt to which you can assign a reason;

(6) the prosecution withheld evidence (a videotape);

(7) the trial court deprived Petitioner of a fair trial by joining three unrelated cases, and trial counsel was ineffective for failing to object; and

(8) the cumulative effect of the issues deprived Petitioner of a fundamentally fair trial.

## II.  DISCUSSION

As noted above, Respondent claims that all of Petitioner's claims are barred from substantive review by the doctrine of procedural default.  A procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  The doctrine of procedural default prohibits a federal court from reviewing the merits of a petitioner's claims, including constitutional claims, if the state court declined to hear the claims because the prisoner failed to abide by a state procedural rule.  *Martinez v. Ryan*, __ U.S. __, __, 132 S. Ct. 1309, 1316 (2012).  Stated differently, a claim is procedurally defaulted and may not be considered by a federal court on habeas review "[w]hen a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are

---

[1]  Petitioner alleges that appellate counsel also was ineffective for failing to move to suppress Mr. Metts' statement.

still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977), and *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)).

### A. Claims I and II

Petitioner's first claim alleges that the evidence at trial was insufficient to support his convictions. His second claim alleges that trial counsel was ineffective for failing to request appointment of an expert on eyewitness identification. Petitioner presented these claims to the Michigan Court of Appeals on direct appeal, but when he attempted to raise the claims in the Michigan Supreme Court, his application was returned to him because it was untimely.

A federal court may not grant habeas corpus relief to a state prisoner unless the prisoner first exhausts his remedies in state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This requirement generally is satisfied if the petitioner "invoke[s] one complete round of the State's established appellate review process," including a petition for discretionary review in the state supreme court, "when that review is part of the ordinary appellate review procedure in the State." *Id.* at 845, 847; *see also Bray v. Andrews*, 640 F.3d 731, 734-35 (6th Cir. 2011) (noting that the exhaustion doctrine requires petitioners to fairly present their claims to the state court of appeals and to the state supreme court) (quoting *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)).

Petitioner did not raise his first two claims in the Michigan Supreme Court. Thus, it initially appears that his first two claims are not exhausted. But Petitioner no longer has

a state remedy to exhaust because he missed the state supreme court's filing deadline on direct review and the only post-conviction remedy available to him is to file a motion for relief from judgment. *See* Mich. Ct. R. 6.502. Petitioner has already filed one motion for relief from judgment, and he may not file another one because his first two claims are not based on a retroactive change in the law or on "new evidence that was not discovered before the first such motion." Mich. Ct. R. 6.502(g)(2).[2] Consequently, Petitioner's first two claims must be deemed exhausted, but procedurally defaulted. *Pudelski v. Wilson*, 576 F.3d 595, 605 (2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Federal habeas review of Petitioner's procedurally defaulted claims is barred unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 1. Cause and Prejudice

Petitioner has not advanced any argument in support of a finding of cause and prejudice. The Court therefore deems the "cause and prejudice" argument abandoned or forfeited. *Strough v. Colson,* 680 F.3d 596, 608 (6th Cir. 2012); *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003) (citing *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000)).

---

[2] Petitioner claims to have new evidence from Keenan Verner who asserts in an affidavit dated February 9, 2010, that Petitioner was working for him in Detroit on October 16, 17, and 21, of 2002. Petitioner claimed in his motion for relief from judgment, which he filed in 2007, that his trial attorney was ineffective for failing to produce Mr. Verner to establish an alibi defense. Thus, Mr. Verner's allegations are not new evidence for purposes of Rule 6.502(g)(2), and Petitioner cannot file a second motion for relief from judgment pursuant to the exception for new evidence.

### 2. Miscarriage of Justice

The only question is whether the Court's failure to review Petitioner's claims on the merits will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. The miscarriage-of-justice exception "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Thus, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To demonstrate actual innocence, however, Petitioner must show that, in light of some new evidence, no reasonable juror "would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

As noted above in footnote two, Petitioner has submitted an affidavit from Keenan Verner, who states that he employed Petitioner to do some home improvement projects on his property in Detroit during October of 2002. Mr. Verner goes on to say that, before Petitioner's trial, he contacted Petitioner's trial attorney and informed him that Petitioner was working for him at his home on Forrer Street in Detroit on October 16, 17, and 21, 2002. Mr. Verner also states in his affidavit that Petitioner's working hours were 8:00 a.m. to 6:00 p.m., Monday through Saturday, and that Petitioner's attorney did not return his calls even though the attorney said that he would be calling Mr. Verner to testify in Petitioner's behalf at Petitioner's trial.

Petitioner's jury was not informed of Mr. Verner's allegations that Petitioner was

10

working for him on the days of the robberies.  Had Verner's testimony or affidavit been offered at trial, the jury could have weighed the evidence, along with the evidence offered by the State, in deliberating its verdict.  *Herrera*, 506 U.S. at 418.  For the following reasons, however, Petitioner has failed to show that no reasonable juror would have voted to convict him had the jury known about Mr. Verner's allegations.

The prosecution established through unbiased eyewitnesses that Petitioner committed a robbery at Hydronics Supply, at the Three Dollar Car Wash in Bloomfield Township, and at the Main Auto Clearance Center in Royal Oak.   In each case, the eyewitness had a good opportunity to view the robber.  The eyewitnesses' descriptions of the robber were generally consistent with each other, and their testimony established that there were certain common elements in the criminal incidents.  As the prosecutor pointed out in his closing argument, the crime was the same in each case, the weapon used was a small gun, and the crimes were committed during a five-day period.  The incidents occurred at businesses when there were no other customers present, and two of the crimes happened near the close of the business day.  Each time, the robber engaged in small talk and then pulled out a gun and demanded money and/or valuables.  At two of the businesses, the robber asked whether the company was hiring, and he left a piece of paper with a name and telephone number.  The first name (Cedric) was the same on both pieces of paper.  The robber took personal property from the victims and threatened them before leaving.  The victims independently identified Petitioner in a photo array and at trial.

The testimony of a single witness is sufficient to support a jury's verdict when, as here, "the testimony was enough to prove [the defendant's] involvement beyond a reasonable doubt."  *United States v. Graham*, 622 F.3d 445, 450 (6th Cir. 2010), *cert.*

11

*denied*, __ U.S. __, 131 S. Ct. 2962 (2011).  Given the certainty of the victims' identification in this case, the similarities in the crimes, and the fact that Petitioner himself did not testify about being elsewhere during the crimes, he has not persuaded the Court that no reasonable juror would have convicted him in light of Mr. Verner's allegations.

Petitioner also has not persuaded the Court that this is an "extraordinary case" in which "a constitutional violation has probably resulted in the conviction of one who is actually innocent."   *Carrier*, 477 U.S. at 496.  His claim of innocence is based on an affidavit, but claims of actual innocence "based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations."  *Herrera,* 506 U.S. at 417.  Moreover, at his sentencing, Petitioner apologized to the trial court, the victims, and his family for his actions.  He explained that he had a "weed addiction" and that he had "tried to get fast money without hurting anybody."  (Tr. Dec. 7, 2004, at 6.)

Petitioner has not satisfied the exception for miscarriages of justice.  Therefore, his first two claims are procedurally defaulted.

## B.  Claims III through VIII

Petitioner's remaining claims (three through eight) allege that trial counsel was ineffective, the trial court committed errors, the prosecutor withheld evidence, and the cumulative effect of errors deprived Petitioner of a fair trial.  These claims are procedurally defaulted because Petitioner failed to raise the claims on direct review of his convictions and because the state courts relied on this procedural error to deny relief.

At issue is Michigan Court Rule 6.508(D), which reads in relevant part:

> **(D)  Entitlement to Relief.**   The defendant has the burden of

establishing entitlement to the relief requested.  The court may not grant relief to the defendant if the motion

. . . .

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence . . . unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal . . . , and

(b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D)(3).

Petitioner violated Rule 6.508(D)(3) by failing to raise claims three through eight on direct appeal and by asserting those claims for the first time in his motion for relief from judgment and subsequent appeals.  Moreover, the trial court, the Michigan Court of Appeals, and the Michigan Supreme Court rejected Petitioner's claims for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  Although the state appellate courts' orders citing Rule 6.508(D) were not "explained orders invoking a procedural bar," *Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010), the trial court issued a reasoned opinion in which it specifically stated that Petitioner had failed to demonstrate "good cause" and "actual prejudice" under Rule 6.508(D)(3)(a) and (b).  Thus, the last state court to issue a reasoned opinion actually enforced Rule 6.508(D)(3).

The rule was an adequate and independent state law ground for rejecting Petitioner's claims because the rule was firmly established and regularly followed by the time Petitioner appealed his conviction.  Therefore, Petitioner's last six claims are procedurally defaulted unless he can show "cause" for his default and "prejudice" or that

13

a miscarriage of justice will occur if the Court does not consider his claims on the merits. *Coleman*, 501 U.S. at 750.

### 1.  Appellate Counsel as "Cause"

Petitioner alleges that his appellate attorney was "cause" for the failure to raise claims three through eight on direct appeal.   The problem with this argument is that Petitioner did not exhaust state remedies for his allegation about appellate counsel. Although he did state in his motion for relief from judgment and subsequent appeals that appellate counsel's ineffectiveness constituted "cause" for his procedural default, he made that argument in a section of his brief entitled "cause and prejudice."   He did not raise the argument as an independent claim in state court.   The only independent claim that Petitioner made about his appellate attorney was his claim that appellate counsel failed to move to suppress a statement made by Shawn Metts.   Because Petitioner did not raise an independent claim about appellate counsel's failure to raise claims three through eight on direct appeal, counsel's alleged ineffectiveness on direct appeal cannot serve as "cause" for Petitioner's procedural default.   *Carrier*, 477 U.S. at 488-89.

Even if Petitioner's allegation about appellate counsel were exhausted, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* at 486.   And an appellate attorney is not required to raise every nonfrivolous claim requested by the client.   *Jones v. Barnes*, 463 U.S. 745, 751 (1983).   "[T]he decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004).   To prove ineffective assistance of appellate counsel, Petitioner must establish (1) that his appellate attorney

14

was objectively unreasonable in failing to raise nonfrivolous issues on appeal and (2) a reasonable probability that the result of the appeal would have been different were it not for his attorney's unprofessional errors. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

The claims which were not raised on direct appeal allege ineffective assistance of trial counsel, trial court errors, prosecutorial misconduct, and cumulative effect of errors. The Court will briefly analyze these claims to determine whether appellate counsel made an objectively unreasonable decision not to raise the issues and whether Petitioner would have prevailed on appeal had he raised the issues.

### a. Trial Counsel

Petitioner claims that trial counsel was ineffective for failing to produce witnesses who could have established an alibi defense, for advising him not to testify, and for failing to move to suppress Shawn Metts' statement. The only alibi evidence Petitioner has submitted is Keenan Vernor's affidavit, which states that Petitioner was working for him in Detroit on the dates of the robberies. The affidavit is not supported by any work records or pay receipts, and because one of the robberies occurred around lunch time and another robbery occurred about 6:45 p.m., it is at least conceivable that Petitioner could have committed those robberies during a lunch break or after regular work hours. Thus, trial counsel did not act unreasonably in failing to assert an alibi defense.

Petitioner claims that he could have testified he was employed at the time of the robberies and did not need to be committing robberies. The record, however, indicates that Petitioner had a prior conviction for armed robbery. If he had testified, the prosecutor could have attempted to impeach him with his criminal record and could have argued under Michigan Rule of Evidence 609(a)(2) that Petitioner was not credible due to his prior

15

conviction for a crime containing an element of theft.  Therefore, defense counsel was not ineffective for advising Petitioner not to testify.

The contention that trial counsel should have moved to suppress Shawn Metts' statement is frivolous because the statement was never admitted in evidence.  The Court concludes that Petitioner's claims about trial counsel lack merit and that appellate counsel was not ineffective for failing to raise the issues on appeal.

### b.  The Trial Court

#### i.  The Refusal to Re-Read Testimony

Petitioner alleges that the trial court erred and abused its discretion by refusing the jury's request for a transcript without determining whether the jury desired a specific part of the transcript.  Petitioner contends that the trial court foreclosed the matter without a justifiable finding that the request was unreasonable.  Petitioner also alleges that trial counsel's failure to object to the trial court's handling of the issue was another example of his inept performance.

The record indicates that the deliberating jurors sent a note to the trial court asking whether they could have a transcript of the trial.  The trial court responded, "No, you may not, because there is not a transcript.  The court reporter took it down.  She hasn't typed it up.  That only happens in Hollywood, not in real life."  (Tr. Nov. 16, 2004, at 313.)

Although the trial court could have attempted to address any specific concerns the jurors had, "[t]here is no recognized constitutional right to the production of trial transcripts to the jury." *United States v. Sain*, 387 F. App'x 558, 560 (6th Cir. 2010).  Therefore, the trial court's refusal to provide the transcript of trial "cannot be construed as an abuse of its discretion." *Id.*  It follows that defense counsel was not ineffective for failing to object to the

16

trial court's response to the jurors' request, and appellate counsel was not ineffective for failing to raise the issue on appeal.

### ii.  The Instruction on Reasonable Doubt

Petitioner alleges next that the trial court erred by instructing the jurors that reasonable doubt is a doubt to which you can assign a reason.  The actual instruction reads:

> A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence.  It is not merely an imaginary or possible doubt, but a doubt based on reason and common sense.
>
> A reasonable doubt is just that, a doubt that is reasonable after a careful and considered examination of the facts and circumstances of this case.

(Tr. Nov. 16, 2004, at 294).

The Constitution does not require courts to use any particular form of words when instructing a jury on the prosecution's burden of proof, "so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).  Further, the United States Court of Appeals for the Sixth Circuit has upheld the constitutionality of the standard instruction used in Petitioner's case.  *See Binder v. Stegall*, 198 F.3d 177 (6th Cir. 1999).  Therefore, Petitioner's challenge to the jury instruction on reasonable doubt lacks merit, and appellate counsel was not ineffective for failing to raise the claim on appeal.

### iii.  The Joinder of the Charges

Petitioner's final allegation about the trial court is that the court erred by joining his three armed robbery cases for trial.  Petitioner further alleges that trial counsel was ineffective for failing to object to the joinder of charges.

17

In Michigan, a court may order a joint trial when actions involve a substantial and controlling common question of law or fact. Mich. Ct. R. 2.505(A). But the issue on habeas review "is not whether the failure to sever counts for separate trials was a violation of a state rule of procedure." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007). Rather, the only issue is whether the joinder of the three cases deprived Petitioner of due process of law under the Fourteenth Amendment. *Id.* (citing *Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980)). To prevail on his claim, Petitioner must show that the joinder of his three cases was so prejudicial as to deprive him of his right to a fair trial. *Id.* (quoting *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986)).

> Without question, a risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible. *See, e.g., Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998). By allowing joinder of offenses, the possibility exists that a jury may use the evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various crimes charges. *See Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir. 1998). The prejudice that [Petitioner] must demonstrate, however, in order to justify a grant of a writ of habeas corpus is actual prejudice, not merely the potential for prejudice. *See Herring v. Meachum*, 11 F.3d 374, 377-78 (2d Cir. 1993).

*Id.*

The three cases at issue here involved the same charge and were factually similar. Trying them together was an efficient way of handling them, particularly because the cases were not complicated, and it was unlikely that the jury would confuse the evidence. Petitioner was not entitled to separate trials simply because he may have had a better chance of acquittal in separate trials. *Zafiro v. United States,* 506 U.S. 534, 540 (1993). Furthermore, the trial court instructed the jurors that Petitioner was charged with three counts of armed robbery and that the counts were separate crimes. The court charged the

jurors to consider each crime separately in light of all the evidence. The court also stated that the jurors could find Petitioner not guilty or guilty of any one of the counts. (Tr. Nov. 16, 204, at 308.)

The Court finds that the joinder of Petitioner's cases for trial did not result in actual prejudice, nor deprive Petitioner of a fair trial. The trial court, therefore, did not deprive Petitioner of due process by joining the cases for trial, and defense counsel was not ineffective for failing to object to the joinder. Appellate counsel was not ineffective for failing to raise the issue on appeal.

### c. The Prosecutor

Petitioner alleges that the prosecutor violated the trial court's discovery order and withheld a videotape from him. The videotape did not depict any of the robberies; instead, it showed a black man going up to the counter at a gas station. (Tr. Nov. 15, 2004, at 142.) Apparently, a credit card stolen in the Ferndale robbery was used at the Ferndale gas station depicted in the videotape. (*Id.* at 132-34.)

Petitioner's claim that the prosecutor violated the trial court's discovery order by not producing the videotape is not a cognizable claim on habeas corpus review. *Colston v. Burke*, 37 F. App'x 122, 125 (6th Cir. 2002). Thus, Petitioner's claim lacks merit even if it is not procedurally defaulted.

Petitioner's allegation that the prosecutor withheld evidence from the defense team is a cognizable claim because the claim raises a constitutional issue. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (stating that "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). *Brady*,

19

however, "generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994). A delay in disclosing evidence violates *Brady* only when the delay itself causes prejudice. *Id.* at 561.

Petitioner admits that the videotape in question was admitted in evidence at his trial. In fact, the videotape was introduced midway through the first day of trial. Detective John Thull testified that the tape had degraded to the point where only the race and gender of the person depicted on the tape were visible. (Tr. Nov. 15, 2004, at 142.)

Even assuming that the videotape was exculpatory evidence, Petitioner has failed to show that the prosecutor suppressed it or that the delay in producing the tape prejudiced him. Appellate counsel therefore was not ineffective for failing to raise this issue on appeal.

### d.  The Cumulative Effect of Errors

Petitioner alleges that the cumulative effect of the errors enumerated above deprived him of a fundamentally fair trial. A claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable on habeas review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)), *cert. denied,* No. 11-9887, 2012 WL 1378961 (U.S. June 11, 2012). Therefore, Petitioner's claim lacks merit even if it were not procedurally defaulted.

### 2.  Conclusion on Petitioner's "Cause and Prejudice" Argument

For all the reasons given above, habeas claims three through eight lack merit and appellate counsel did not act unreasonably in failing to raise the claims. Further, Petitioner

20

in all probability would not have prevailed on appeal had he raised the claims. Therefore, appellate counsel was not ineffective, and Petitioner has failed to show cause for his procedural default of failing to raise all his claims on direct appeal.

The Court need not determine whether Petitioner was prejudiced by the alleged constitutional errors, because he has not shown "cause" for his procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986). And, as discussed above, Petitioner has not established a credible claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of habeas claims three through eight.

### III.  CONCLUSION

All eight of Petitioner's claims are procedurally defaulted. Claims one and two are procedurally defaulted because Petitioner failed to exhaust state remedies for those claims and because he no longer has a state remedy to exhaust. Claims three and eight are procedurally defaulted because Petitioner failed to raise those claims on direct review and the state courts rejected his claims for that reason. Petitioner has not shown "cause" for his procedural defaults and resulting prejudice, and he has not satisfied the exception for miscarriages of justice. The Court therefore denies the petition for a writ of habeas corpus [dkt. #1] on the basis of Petitioner's procedural defaults.

The Court declines to issue a certificate of appealability because reasonable jurists would not find it debatable whether the petition states a valid claim of the denial of a constitutional right or whether the Court's procedural ruling was correct. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner nevertheless may proceed *in forma pauperis* on appeal if he chooses to appeal this decision because an appeal could be taken in good

21

faith.  28 U.S.C. § 1915(a)(3).


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  July 13, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 13, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager